STATE OF MISSOURI at the relation of METROPOLITAN LIFE INSURANCE COMPANY, a Corporation, Relator, v. HOPKINS B. SHAIN, ROBERT M. REYNOLDS and EWING C. BLAND, Judges of the Kansas City Court of Appeals.—121 S. W. (2d) 789.

Division One, November 19, 1938.

*William C. Michaels, Robert E. Coleberd* and *Albert L. Reeves, Jr.,* for relator; *Harry Cole Bates* and *Michaels, Blackmar, Newkirk, Eager & Swanson* of counsel.

*Richard C. Southall* for respondents.

438

FERGUSON, C.—This is an original proceeding by certiorari whereby the relator, Metropolitan Life Insurance Company, seeks to quash the opinion of the Kansas City Court of Appeals in the case of Bailey v. Metropolitan Life Insurance Company, 115 S. W. (2d) 151, which was an action, by the administratrix of the estate of Dan L. Bailey, deceased, on a life insurance policy "issued to deceased by the defendant under date of September 14, 1925." Plaintiff had verdict and judgment in the Circuit Court of Jackson County. On defendant Insurance Company's appeal the Kansas City Court of Appeals affirmed the judgment of the trial court. Relator claims said opinion, by certain rulings therein made and hereinafter discussed, contravenes, and is in conflict with, controlling decisions of this court. In stating the facts we limit ourselves to the facts disclosed by the opinion and pertinent on the questions of conflict involved in this proceeding.

The insured, Dan L. Bailey, was the husband of Inez Bailey, who, as administratrix of the estate of Dan L. Bailey, deceased, brought the action on the policy. The issuance of the policy and that premiums thereon "were duly paid up to October 1, 1928," was "admitted." It was also "admitted by defendant" that the provision of the policy "for extended insurance . . . carried the insurance in full effect to November 22, 1931." Bailey "left his home and went to Chicago in the fall of 1925 for the purpose of securing work." He "communicated with his wife until November, 1926; after which time no letter or postal card was ever received from the insured." The wife "made diligent effort to locate her husband whose last-known address was 18 South Jefferson Street, Chicago, Ill. Her efforts were of no avail." The opinion observes: "It is fair to infer that the seven year statute . . . began to run in the latter part of 1926;" "this suit was begun in August, 1936;" "Under the evidence . . . the presumption of death of insured existed at the date this action was brought. Such being the case, the issue is narrowed to the question of time of death;" and "the real issue . . . is . . . whether or not the insured died prior to November 22, 1931," the date (see supra) that the policy "lapsed."

As shown by respondents' opinion, the trial court, overruling the defendant Insurance Company's timely and pertinent objections thereto, permitted plaintiff and two of her witnesses to testify to statements or declarations said to have been made to them by another person, who was not a party to the action or a witness in the case, which declarations were admitted as evidence tending to prove that the insured, Bailey, had died prior to November 22, 1931. On its appeal defendant assigned error in the admission of this testimony but the opinion of the Court of Appeals hold that same was properly admitted. Relator herein claims such ruling of the Court of Appeals is in conflict with controlling decisions of this court. Much of the testimony referred to, together with defendant's objections thereto and exceptions to the action of the trial court in overruling same, is set out, in question and answer form, in the opinion. No question is made as to the sufficiency of the objections and we have therefore omitted them, the court's ruling thereon and defendant's exceptions, in the quoted excerpts from the opinion. In reviewing the questioned evidence the following is set out in the opinion.

"A Mr. McClelland, a second cousin of insured went to Chicago, Ill., with insured. The plaintiff, while upon the witness stand, was asked as to the whereabouts of McClelland and answered that he was dead. It appears plaintiff had conversed with McClelland before his death. . . . In the examination of plaintiff the following questions and answers are shown.

" 'Q. . . . State the conversation you had with Mr. McClelland. . . . A. I was surprised when I met him and I asked him "Where is Mr. Bailey?" and he said, "Didn't you know he is dead?" and I was so upset I didn't ask him so much, and he said, "He was hit by an automobile in 1926 in Chicago."

" 'Q. . . . Two years prior to the time you were talking to him? A. Yes sir. . . .

" 'Q. . . . Aside from what you have related is that all that was said? A. He said that he was hit with an automobile and died in Chicago and he left there shortly after that and came back to Kansas City, but he didn't know where I was. . . .'

"A Mr. Rice was called as a witness by plaintiff. He testified as to his acquaintance with plaintiff and the insured . . . that he was in Chicago in November, 1926, and saw and conversed with insured at that time. As to the conversation, he was permitted . . . to state: '. . . I was there looking for work . . . we talked quite awhile . . . and he gave me his address where he was rooming and told me to call around and look him up . . . if I stayed there.' " Then the following questions and answers from the examination of witness Rice are set out:

" 'Q. Later did you make a call at this address given you by Mr. Bailey? A. Yes, sir, I did.

440

" 'Q. When you got there did you find Mr. Bailey? A. No sir, I didn't. . . .

" 'Q. Who did you talk to when you went there? A. I talked to the landlord that ran the house.

" 'Q. . . . And did you ascertain from him whether or not Mr. Bailey was living or dead? . . . A. They told me he was dead.' . . .

"A Mr. Madigan was called as a witness for plaintiff. . . . The following questions and answers . . . are shown in the examination" of the witness:

" 'Q. During the time you were up there (Chicago) did you see this Dan Bailey? A. No, sir. . . .

" 'Q. Did you know where he was living? A. I found out through a friend of mine that he was living on Jefferson Street.

" 'Q. Did you make inquiry there to try to locate him? A. Yes, sir.

" 'Q. What did you ascertain at the place where he lived with reference to whether he was living or dead? . . . A. They told me there that he was dead.

" 'Q. . . . Who did you talk to? A. The fellow that was supposed to be running the rooming house there. . . .

" 'Q. . . . Approximately what time was that? A. I think it was along about the middle of December, 1926."

█ We have set out the testimony of the foregoing witnesses as same is shown in respondents' opinion and it appears therefrom that Mrs. Bailey, the plaintiff, was permitted to testify to what McClelland, deceased at time of the trial, had told her in 1928, that Bailey was dead and that he had died in Chicago in 1926; the testimony of plaintiff's witness Rice as to what the "landlord, who ran the house" at which Bailey was last known to have "roomed" told him in 1926, was admitted, viz.; that "he (Bailey) was dead;" and plaintiff's other witness Madrigan was permitted to testify to what "the fellow who was supposed to be running the rooming house" had told him in December, 1926; that "he (Bailey) was dead."

It might be said that no rule of evidence is more important, more firmly established or more frequently applied than the general one that hearsay evidence of a fact is not admissible. We refer briefly to a few cases illustrative of this court's application of the hearsay rule. Lynch v. Chicago and Alton Ry. Co., 208 Mo. 1, 106 S. W. 68, was an action for damages for the death of John Lynch, "a signal man" in the employ of defendant Railway Company. It was alleged that Lynch was struck and killed by one of defendant's trains. The opinion, in discussing the evidence, says it is asserted "that the lips of the engineer and fireman in charge of this engine and tender are sealed by death." The opinion then states: "As to this, the only

evidence that the fireman and engineer in charge of that engine on that day were dead at the time of the trial appears in the cross-examination of the witness Jacks in the following interrogatories and answers: 'Q. Do you know where the engineer and fireman are of the engine . . . spoken of here? A. No, sir, I do not. Q. You understand, do you not, that they are dead? A. I have heard that, yes, sir.' . . . It is too obvious for discussion that the testimony of Jacks that they (the engineer and fireman) were dead was the merest hearsay, and, if they were dead at the date of the trial, that fact was not established by any competent evidence." It will be noted that the testimony of Mrs. Bailey and her two witnesses, set out supra, was in effect no more than that they had heard, been told by other persons, that Bailey was dead. Neff v. City of Cameron, 213 Mo. 350, 111 S. W. 1139, was an action by a two year old child for damages for injuries allegedly caused by a defective sidewalk. At the time of trial the child's mother, who was not a party to the suit, was dead and had never testified in the case. It was held that testimony by a witness that she heard the mother say that plaintiff "fell off a box" and thereby received the injuries sued for was properly excluded and stricken out as being hearsay. In the opinion in Bonslett v. New York Life Insurance Co. (Mo.), 190 S. W. 870, cited in the brief for respondents, we find the following; "A part of the deposition of one Chapin was excluded. The portion excluded consists of details of conversations Chapin says he had with persons not parties, or even witnesses, in the case. It was all hearsay, and the ruling was correct." In an action by an employee against his employer for damages for personal injuries, we held that evidence that after the plaintiff fell another employee picked up a stick and said that was what plaintiff "fell on" was inadmissible because hearsay. [Bello v. Stuever (Mo.). 44 S. W. (2d) 619.] In an action for the price of an electric generator wherein the buyer (defendant) counterclaimed for breach of warranty we held that the trial court properly excluded the testimony of a witness that an engineer, who had examined the generator, told him "that the shaft was bent;" the engineer was not the seller's agent. [Spruce Co. v. Mays, 333 Mo. 582, 62 S. W. (2d) 824.] In Jackson v. Curtiss-Wright Airplane Co., 334 Mo. 805, 68 S. W. (2d) 715, we pointed out that claimant's testimony, based on statements of her husband for whose death she sought compensation from the airplane company, that he was working for it at a stated daily wage, was incompetent as being hearsay. This court has in the foregoing and other cases, too numerous to here collect and cite, consistently ruled that a court will not receive the testimony of a witness as to what some other person told him as evidence of the existence of the fact asserted. In this instance the Court of Appeals held that the testimony of the three witnesses, as to what some other person, not a witness in the

442

case or a party to the suit, had told them, was admissible as evidence of the existence of the fact which it was sought to establish, viz.; that Bailey had died prior to November 22, 1931, at which date the policy lapsed. Such holding seems clearly to contravene the controlling decisions of. this court announcing and applying the general rule against the admission of hearsay evidence. .

After setting out the foregoing testimony of plaintiff and her witnesses, Rice and Madigan, as to what some other person told them, respondents' opinion says: ''We conclude that the statements of the witnesses, complained of by defendant, are not competent to prove the 'fact of death. Neither do we hold that such evidence is admissible under the rule of evidence as to pedigree. The question of pedigree is not at issue in the case at bar.'' The opinion then quotes excerpts from Vol. 10, Ruling Case Law, pages 975, 976, 978, the substance of which is; that ''the tendency of recent adjudications is to extend rather than to narrow the scope of the introduction of evidence as part of the *res gestae*;'' and that ''Time is not necessarily a controlling element or principle in the matter of *res gestae*;'' following which the opinion says: ''We conclude that at the time the above declarations were admitted in evidence the fact of death of insured ˙had been established and that the question of time of death thereby became a part of the *res gestae,* and that the declarations were admissible as going to time of death. We therefore hold that the trial court did not commit error in the admission of such testimony.'' █

We do not discover the presence of circumstances or conditions, nor a situation, such as would make the statement of McClelland to Mrs. Bailey and that of the ''supposed'' landlord to Rice and Madigan admissible as part of the *res gestae* and in holding such declarations admissible on that theory respondents' opinion contravenes controlling decisions of this court relating to the admissibility of unsworn, extrajudicial, declarations as a part of the *res gestae* and declaring the basic and general principles applicable in all such cases. In Redmon v. Metropolitan Street Railway Company, 185 Mo. 1, 84 S. W. 26, this court said, ''The *res gestae* may be defined as those circumstances which are the automatic and undisguised incidents of a particular litigated act, and which are admissible when illustrative of such act, indeed, must be in contemplation of law, a part of the act itself.'' According to our cases ruling the admissibility of such declaration as a part of the *res gestae* it must relate to and be explanatory of a litigated act, event, transaction or occurrence and be a spontaneous, instinctive or automatic exclamation or utterance directly arising out of such act, event, transaction or occurrence itself and so closely connected therewith as to be a very part thereof excluding any idea of design, afterthought or premeditation or of being a mere retrospective narration or statement.  [Leahey v. Cass Ave. & Fair

Grounds Ry. Co., 97 Mo. 165, 10 S. W. 58; Redmon v. Metropolitan Street Ry. Co., supra; State ex rel. Bankers Life Co. v. Reynolds, 277 Mo. 14, 208 S. W. 618; Landau v. Travelers' Ins. Co., 305 Mo. 563, 267 S. W. 376; Woods v. St. L. Merchants' Bridge Terminal Ry. Co. (Mo.), 8 S. W. (2d) 922; Lynch v. M. K. T. Railroad Co., 333 Mo. 89, 6 S. W. (2d) 918; State ex rel. Kurz v. Bland, 333 Mo. 941, 64 S. W. (2d) 638; State v. Stallings, 334 Mo. 1, 64 S. W. (2d) 643; Woods v. Southern Ry. Co. (Mo.), 73 S. W. (2d) 374; Bennette v. Hader, 337 Mo. 977, 87 S. W. (2d) 413.] In comparatively recent cases by this court the statement has been repeated with approval that: "The exclamation must be the act talking for itself, not the person talking about the act. It must be the apparently spontaneous result of the occurrence operating upon the perceptive senses of the speaker." [State v. Stallings, 334 Mo. 1, 64 S. W. (2d) 643; Woods v. Southern Ry. Co., supra.] ■ As first stated, we find the declaration which the Court of Appeals' opinion holds admissible as a part of the *res gestae* lacking in the attendant conditions and requirements announced by the foregoing decisions, as well as many other decisions of this court on the subject of *res gestae,* as essential to making such a declaration admissible in evidence on that theory and therefore respondents' opinion in so holding is, in that respect, in contravention of controlling decisions of this court. It is urged that this court has not ruled a like or similar state of facts. As we have examined the argument made in respondents' brief in support of this contention we find it is resolved to this, that this court has not ruled sufficiently like questions and answers or statements made under circumstances identical with those involved and therefore no conflict can be said to exist. We think our holding in State ex rel. Kansas City Southern Ry. Co. v. Shain, 340 Mo. 1195, 105 S. W. (2d) 915, rules the contention. It was there said: "It is well settled that this court will not quash an opinion of a Court of Appeals upon certiorari unless that opinion declares some general principle of law contrary to a controlling announcement of this court upon the same principle, or, on a given state of facts makes some ruling contrary to a controlling decision of this court on equivalent or similar facts. (Citing cases.)

"The facts in the two cases need not be identical. They are sufficiently 'similar' if both sets of facts as a matter of law require the application of the same rule. This is necessarily true because the object of Section 3, Article 6, Constitution of Missouri, giving this court a superintending control over the Court of Appeals by certiorari, is to preserve harmony in judicial decisions." (Citing cases.)

■ Relator asserts the opinion of the Court of Appeals is in further conflict with decisions of this court in holding plaintiff's Exhibit

444

5 admissible. It appears from the opinion that plaintiff's Exhibit 5 was a "certified . . . photostatic copy" of a "certificate of death made on a board of health blank of the City of Chicago, Illinois. The name of the deceased is recorded as unknown. The place of death of the deceased is given as 18 South Jefferson Street, which is the last-known address of the insured. The date of death is November 9, 1926. Cause of death is shown as 'shock and injuries due to external violence.'" It does not appear by whom or how the copy was certified or authenticated. As noted the opinion speaks of same as a "certified . . . photostatic copy" and that it is "certified" to be a copy of the "original death certificate on file in the Bureau of Vital Statistics in Chicago." No point, however, was made in the Court of Appeals as to the authentication. ■ The opinion sets out the following in reference to this death certificate. Plaintiff sent a Mrs. Borland to Chicago to make an investigation. As a witness for plaintiff Mrs. Borland testified, that she had the following description of Bailey; that "he weighed about 165 pounds . . . stockily built . . . five feet ten inches tall . . . had three burn scars below his right knee on his right leg and a cut across the buttocks;" that she "personally went over the records in the bureau of missing persons" in Chicago, where she found "a record of a deceased person whose description corresponded with that of Mr. Bailey," "found one (record) answering the same description as that of Mr. Dan L. Bailey," which record referred to a "certain death certificate;" and that she procured "a copy of the death certificate," which copy is plaintiff's Exhibit 5. The testimony of Mrs. Borland was admitted over defendant's objections but, as appellant, defendant did not, in the Court of Appeals, assign the admission of such testimony as error. The opinion shows that, as appellant, defendant's assignment numbered 2 went to the admission in evidence of plaintiff's Exhibit 5, the "certified . . . photostatic copy" of the death certificate. Error was alleged "for the following reasons: (1) It was not properly identified; (2) There was nothing in the evidence showing that it related to the insured; (3) It was hearsay." Apparently grounds 1 and 2 of the assignment were abandoned, that is not urged in the Court of Appeals, as the opinion states, "the only cases cited under defendant's point No. 2 are cited under the heading, 'It was hearsay'" (the third ground only). The opinion then rules the assignment numbered 2 as follows: "The only case cited that deals with the question of hearsay evidence is American Trust Co. v. Moore (Mo. App.), 248 S. W. 983, wherein it is held that in an action against the maker of a note the court held that it was improper to permit a stranger to testify to a conversation had with an unknown person claiming to be the secretary of the payee.

The other cases cited discuss as to presumptions being piled upon presumptions. Such line of authority has no bearing upon the issue herein presented. . . . We conclude that Exhibit. No. 5, when taken with the testimony of Mrs. Borland, cannot be classed as hearsay evidence. We conclude, from the showing made, that such evidence was direct evidence. Identity is not confined to name alone. The build, weight, height, and markings upon the body often furnish the best evidence of identity. We conclude that there was no error in admitting Exhibit No. 5 in evidence."

Relator here urges as conflict, that "the testimony of Mrs. Borland, as set out in the opinion was pure hearsay and inadmissible on any theory" and that the admission of her testimony was contrary to decisions of this court relating to the inadmissibility of hearsay evidence. However as our preceding resumé points out apparently such alleged error was not assigned by appellant in the Court of Appeals or considered by that court and its opinion makes no ruling thereon, therefore the admissibility of Mrs. Borland's testimony is not here for review in determining alleged conflict of the Court of Appeals' opinion with decisions of this court. [State ex rel. United Rys. Co. v. Allen (Mo.), 240 S. W. 117; State ex rel. Continental Life Ins. Co. v. Allen, 303 Mo. 608, 262 S. W. 43.] "In this character of proceeding we are concerned only with rulings actually made" by the Court of Appeals "either expressly or by necessary implication." [State ex rel. Metropolitan Life Ins. Co. v. Daues (Mo.), 297 S. W. 951, 953; State ex rel. Silverforb v. Smith (Mo.), 43 S. W. (2d) 1054.]

It will be noted the Court of Appeals' opinion states, that, as supporting appellant's assignment of error relating to the admission in evidence of Exhibit 5, cases are cited which discuss "presumptions being piled on presumptions" and adds: "Such line of authority has no bearing upon the issue herein presented." Relator contends that the last quoted statements of respondents' opinion is a ruling in conflict with decisions of this court holding that a case cannot be made out by building one inference upon another, citing: Phillips v. Travelers' Ins. Co., 288 Mo. 175, 231 S. W. 947; Cardinale v. Kemp, 309 Mo. 241, 274 S. W. 437; State v. Capps, 311 Mo. 683, 278 S. W. 695. Assuming the Court of Appeals' opinion inferentially holds that the rule against building inference upon inference was not applicable under the facts of the case we find no conflict in such holding and the decisions of this court, cited by relator, announcing such rule. The facts set out and ruled in respondents' opinion are so unlike and dissimilar to the facts in the cases cited that the same rule as to inferences cannot be said to apply to both sets of facts.

On the appeal defendant insurance company's fourth assignment of error was, that the trial court "erred in submitting the issue of penalties and attorney's fees to the jury because there was no evidence that defendant vexatiously refused to pay plaintiff's claim." Ruling the assignment the Court of Appeals' opinion says: "The plaintiff testified that upon receiving information of the death of insured in 1928, she took up the matter with representatives of the defendant and gave to them the facts she had learned and was told to pay no more premiums and that a man would be sent out from the office, and that a man did come out and she signed papers at his request. Her testimony is that she thereafter went to the company's office and that the papers she had signed were taken from the safe and that she was told that, 'I can't pay that unless you produce a death certificate and when you do we will pay off.' She further testified that she then asked for the papers and that he put them back in the safe. She further testified that these papers were the ones she had signed at the request of the man who had come out about a month previous.

"The defendant placed no one on the stand to contradict the above testimony. No denial is made of the fact that plaintiff was told to cease paying premiums. No denial is made to the fact that the plaintiff, at the request of a representative of the defendant, gave the information of the disappearance of insured or the information of insured's death given by the insured's relative. No denial is made as to the signing of papers containing the above information.

"The defendant, not denying the possession of these papers, did not see fit to produce them at the trial. Under the facts as developed, it is not unreasonable to infer that the papers signed constituted what the plaintiff believed to be proof of death. As to whether or not they constituted satisfactory proof, the defendant was in a position to know. There was certainly nothing in the papers signed by plaintiff, at request of defendant, that would give reason to suspect that the insured was alive or else they would have been introduced in evidence by the defendant.

"No showing is made that defendant made any investigation based upon the information given by plaintiff.

"The testimony in this case clearly is to the effect that the defendant's attitude in this matter shows an almost utter disregard of that solicitude for an insured and his family that is usually manifested in the sale of insurance.

"The accepted rule in Missouri is that unless facts are brought to the insurer's attention before suit is brought, sufficient to induce belief in a reasonable mind that a beneficiary under a policy is entitled to receive the benefit provided in the policy, then there is no ground

for recovéry for vexatious delay. [Grandgenett v. National Protective Insurance Assn., 229 Mo. App. 132, 73 S. W. (2d) 341.]

"Under the law in this State, direct and positive evidence of vexatious delay is not required. It is within the province of the jury to conclude as to the question of vexatious delay from a survey of all the facts in the case that tend to reveal the conduct of the insurance company touching the matter. [Keller v. Home Life Insurance Co., 198 Mo. 440, 95 S. W. 903; Curtis v. Indemnity Co., 327 Mo. 350, l. c. 376, 377, 37 S. W. (2d) 616.]"

Relator contends here that the foregoing ruling is in conflict with the following decisions of this court: Camdenton Consolidated School District v. New York Casualty Co., 340 Mo. 1070, 104 S. W. (2d) 319; State ex rel. Metropolitan Life Ins. Co. v. Shain, 334 Mo. 385, 66 S. W. (2d) 871; and, State ex rel. Continental Life Ins. Co. v. Allen, 303 Mo. 608, 262 S. W. 43.

In the first case cited by relator, Camdenton Consolidated School District v. New York Casualty Co., this court affirmed the judgment for the principal sum thereof but held that the assessment of damages and attorney's fee for vexatious delay was erroneous. We pointed out that "a debatable" question of law was involved, which had not theretofore been expressly ruled by the appellate courts of this State, "affording a reasonable basis for defendant surety company's contention." But no law question was involved in the case under examination. There was no contrariety of opinion as to the rule of law that governed plaintiff's right of recovery or defendant's liability. The only issue, as stated by respondents' opinion, was one of fact, that is, whether the insured died prior to the date the policy lapsed. We deem it unnecessary to review the other two cases relator cites, both are actions on policies of insurance in which the question of alleged waiver by defendant of a defense, which would otherwise have been a complete defense, is involved. We think upon a reading of these cases it will readily appear that the facts and circumstances bearing on the question of vexatious delay in the case ruled by the Court of Appeals' opinion, and the subject of this proceeding, are not sufficiently like or similar to the facts in the cases cited by relator as to warrant us in holding that the ruling of the Court of Appeals is contrary to the decision of this court in the cases cited in support of this alleged point of conflict, nor does respondents' opinion, in this respect, announce any general principle of law contrary to the pronouncement of this court upon the same subject. Relator has not directed our attention to any case decided by this court, and we do not recall such a case, with which the ruling of the Court of Appeals relative to the issue of vexatious delay can be said to be in conflict.

Because of the conflict noted, respondents' opinion and record pursuant thereto should be quashed. It is so ordered. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.