AMY DUNAWAY, ADMINISTRIX OF THE ESTATE OF CLARA BROWN, DECEASED, (DECEASED DEPENDENT), RESPONDENT, v. J. C. PENNEY COMPANY, INC., (EMPLOYER), APPELLANT, AND THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., (INSURER), APPELLANT. —209 S. W. (2) 567.

St. Louis Court of Appeals. Opinion filed March 16, 1948.

Appellant's motion for rehearing, to modify opinion and to transfer cause to the Supreme Court, overruled April 16, 1948.

*G. W. Marsalek* and *Moser, Marsalek, Carpenter, Cleary & Carter* for appellants.

*James H. Connor, Richard K. Nalley* and *Geo. O. Durham* for respondent.

ANDERSON, J.—This is an appeal from a judgment of the Circuit Court of the City of St. Louis, affirming a final award of the Industrial Commission of Missouri, in favor of claimant Clara Brown, widow of David Brown, who, at the time of the injury which resulted in his death, was employed by appellant J. C. Penney Company, Inc.

The claim alleged that, "Employee was engaged in the usual course of his employment, and in attempting to close a window over the cobblestone driveway at the east end of the employer's building ·he ·accidentally fell to the driveway suffering a fractured skull which ·resulted in his death a short time later."

. Employer and insurer, in their answer, denied that the employee's injury and death arose out of or in the course of his employment, and further alleged that, at the time of the accident, said employee was violating a distinct, stated order or rule of the employer.

At the hearing it was agreed that all parties were within the terms of the Missouri Workmen's Compensation Act; that the employer had notice of the accident,; that the claim was timely filed; that the average weekly wages of said employee were $36.52; and that the widow was 54 years of age.

The evidence showed that the J. C. Penney Company, Inc. maintains a large warehouse in the city of St. Louis. A brick-paved drive-

way a block long runs through the building from Poplar Street on the south to Spruce Street on the north. One side of the enclosed driveway is bounded by an exterior wall of the building. In this wall are several large windows. On the day David Brown was injured, and for sometime previous, cartons of dry goods had been stacked against the wall. The cartons were of pasteboard, or corrugated paper, approximately thirty inches wide, and were stacked in a triangular shape, with the successive layers or tiers of cartons receding from the ends of the next lower tier. The window, where the accident to David Brown occurred, was about 12 feet above the level of the driveway, and the cartons were stacked to about the same height.

David Brown, the deceased employee, was a floor monitor or porter. His duties included sweeping up, cleaning, dusting, and opening and closing windows when necessary. He was assigned to the first floor of the warehouse, and worked from 9:00 a. m. to 6:00 p. m., with an hour for lunch.

The employer furnished window poles for opening and closing the windows. The poles were approximately 10 feet long, and had a hook on the end. In order to close a window, it was necessary to put the hook into a ring on the pivoted panes and shove. A man of average height could insert the hook into the top windows from the floor level. However, at times, when cartons were stacked in front of the windows, it was difficult to reach the window rings with the hook on the window pole. In such event, the employer had ladders of various lengths for use by the porters in opening and closing the windows. The porters were instructed to lean the ladder against the stack of cartons, mount the ladder, and, with the aid of the window pole, open or close the window. Window poles, with hooks, and ladders of various lengths, were available at the time of the accident.

John Gerke was department manager, in charge of the receiving and shipping departments at the warehouse in question, and David Brown worked under his supervision and control.

Some time prior to the fatal accident to David Brown, Mr. Gerke had seen footsteps on the cartons which were stacked beneath the windows. At the time Mr. Gerke suspected that Brown and Mayo, the other floor monitor employed there, had been climbing on the boxes to open and close the windows. He asked Brown and May if they had climbed on the boxes, but neither of them would admit having done so. Mr. Gerke then warned them not to walk on the cartons to open and close the windows, and threatened them with discharge if they did. He did not post any notice against such practice prior to the time Brown was injured.

Mayo testified that he had never climbed onto the stack of cartons to open and close windows, and had never seen Brown at any time do so.

.... On the afternoon of August 23, 1946, at about 3:45 p. m., Aaron Morris, a. chauffeur for Columbia Terminals, while walking north in the driveway in said warehouse, saw a man, whom he afterwards learned was David Brown, standing, with his back to the window, on top of a stack of cartons. The cartons were under a window on the east side of the driveway, and were about level with the bottom of the window. Morris turned his head the other way, and continued to walk. He then heard a noise, and as he turned his head toward the stack of cartons, he observed Brown falling through the air, and saw him land on the driveway. Morris ran to him, and when he saw he could give him no help, ran to get the boss.

Mr. Gerke and the company nurse came to the scene. Mr. Brown was unconscious and bleeding profusely from the head. He was immediately taken to a hospital, and died shortly after his arrival.

Morris further testified that he did not recall ever seeing Brown on top of the boxes before, or closing the windows. He stated he had seen someone on the boxes before, but did not know what they were doing there. He also stated that he had seen people there closing windows with a window pole, but didn't recall whether they were standing on the ground level or on something higher while using the pole. He noticed no ladder in the vicinity at the time Brown fell, and did not notice what Brown was doing with his hands when he first saw him.

Mr. Gerke testified that there were no ladders near the cartons when he arrived at the scene of the accident, and so far as he had ascertained, no one had carried a ladder away from there after Brown fell. He also testified that Mr. Brown had no duties which would require him to stand on top of the cartons with his back to the window, and that Brown was not called upon to move boxes off of that stack, or to do any other job which would require him to be up there facing the areaway.

Claimant introduced in evidence a certified copy of the findings of the coroner's inquest, not including a transcript of the evidence, showing the coroner's findings to be that David Brown came to his death from: "1. Fracture of skull, 2. subdural hematoma, when he fell while trying to close a window on the first floor of the J. C. Penney Co., building 400 S. 14th Street, landing on the cobble stone paved alley, around 3:45 P. M., August 23, 1946."

The referee found in favor of claimant, and allowed $150 for burial expenses and compensation in the sum of $20 per week for 365.2 weeks, or until said widow's death or remarriage, subject to an attorney's fee in favor of James H. Connor for necessary legal services rendered, in an amount equal to 25 per cent of the money award, said fee to be a lien on such compensation. The attorney's fee was ordered commuted, said order being "that the sum of $5.00 per week for 26 weeks, or a total of $130.00, now due and payable,

be paid to said attorney, and that, in addition thereto, the balance of said fee shall be commuted and paid in a lump sum, said balance as commuted amounting to the sum of $1,419.28, which, together with the sum of $130.00 aggregates a total sum of $1,549.28 now due and payable to said attorney.'' The payments of compensation to Clara Brown were, by reason of said order commuting the attorney's fee, reduced to $15.00 per week.

. Upon application for review, the Industrial Commission affirmed the award of the referee. There was an additional finding that Brown's injury and death was not caused by the failure to observe any safety rule or regulation promulgated by the employer.

This final award was affirmed by the circuit court. From the judgment of the circuit court the employer and insurer have appealed. On December 22, 1947, the claimant Clara Brown died, and thereafter Amy Dunaway, administratrix of the estate of Clara Brown, was substituted as party respondent in this court, and the cause was revived in her name.

Appellants contend that the evidence wholly fails to show, or even to raise, a reasonable inference that the accident resulting in David Brown's death arose out of and in the course of his employment, and that the finding of the commission that it did was based on pure speculation and conjecture.

An injury to an employee arises in the course of his employment, within the meaning of our Workmen's Compensation Act, when it occurs within the period of his employment, at a place where he might reasonably be, and while he is reasonably fulfilling the duties of his employment, or engaged in the performance of some task incidental thereto. Smith v. Levis-Zukoski Mercantile Co., et al., 223 Mo. App. 743, 14 S. W. 2d 470. An injury arises out of the employment when there exists between the accident and such employment a causal connection. Ries v. DeBord Plumbing Co., Mo. App., 186 S. W. 2d 488.

The burden is on the claimant to show that the death of David Brown was caused by accidental injury arising out of and in the course of the employment, and to show it by direct and positive evidence, or by evidence from which such inference could be fairly drawn. Stone v. Blackmer & Post Pipe Co., 224 Mo. App. 319, 27 S. W. 2d 459; Ulman v. Chevrolet-St. Louis Division of General Motors Corporation, 349 Mo. 906, 163 S. W. 2d 778; Miller v. Ralston-Purina Co., 341 Mo. 811, 109 S. W. 2d 866. The proof of these facts may be by circumstantial evidence as well as by direct evidence, and the commission may draw an inference from proven facts, so long as it is a legitimate inference, and does not rest upon pure speculation and conjecture.

Here it was shown that it was a part of Brown's duty to open and close the windows. He was last seen on a stack of boxes adjacent to the window. The windows could be opened and closed by one standing

on the boxes. Although there was no direct evidence that Brown ever opened and closed the windows while standing on the boxes, and in fact there was evidence that he denied doing so, there was evidence that someone had been on top of the stack of boxes on previous occasions. No one else would have occasion to be on these boxes in line of any duty owed to the employer. There is no suggestion in the evidence that Brown could have any other motive for climbing onto the boxes except to carry out his duty in opening or closing the windows. There was evidence that on the occasion in question there was no ladder or window pole anywhere in the vicinity of the stack of cartons from which Brown fell. From this evidence we believe a legitimate inference could be drawn that Brown at the time in question climbed onto the boxes to open or close the windows, which was a part of his duties. There was, therefore, sufficient evidence to support the finding of the commission that the accident which caused Brown's death arose out of and in the course of his employment.

After the submission of this case, appellants filed in this court a supplemental brief, in which they request that, in the event we rule in favor of respondent on the merits, that we remand the cause to the Industrial Commission for the entry of a terminating award, limited to the amount of compensation due at the time of Mrs. Brown's death, and that we indicate, in our opinion, the right and power of the commission under the existing circumstances to modify the award of the commuted attorney's fee, should the commission be requested to make such modification, and should it see fit to do so.

As we view the matter, there is no necessity for the entry of a new award by reason of the death of the widow short of the termination of the compensable period of 365.2 weeks provided by the award. The award itself specified that payments of the death benefit should cease upon the death of the widow; and, while it, no doubt, will be proper practice to call the widow's death to the attention of the commission, and have appropriate entries made in the files of the commission, nevertheless, there is no occasion or authority for the entry of a new and modified award.

Appellants are, of course, correct in their contention that that part of the award which provided for a partial commutation of the compensation for payment of a lump sum attorney's fee did not become final and conclusive upon the entry of the award. The whole award was an entirety, and the commutation feature was a part of it, and dependent upon it. The appeal suspended the operation of the award, and if we were reversing the award and denying compensation, there would be no compensation to be commuted for payment of a lump sum attorney's fee. However, we are affirming the award, and, consequently, the award becomes final and conclusive as to each and

every matter determined therein, including the partial commutation of compensation for payment of a lump sum attorney's fee.

Nor can we hold that the commission has discretion to modify the award by reducing the amount of the attorney's fee.

The general assembly has seen fit to authorize the allowance of a lump sum attorney's fee, notwithstanding the contingent nature of the award. Section 3711, R. S. Mo. 1939, Mo. R. S. A. Section 3711. Wims v. Hercules Contracting Co., 235 Mo. App. 1, 123 S. W. 2d 225. Consequently, if the commission committed no error in directing such manner of payment in this instance, and the appellants make no such contention, then the fact that that which was always a contingency has now become an actuality does not affect the validity of the award. And, while it is true that because of the death of Mrs. Brown, the lump sum fee allowed will represent a commuted portion of compensation installments which will never become due, such fact is of no consequence so long as the commission in making the award acted in accordance with the power conferred upon it by the statutes.

The happening of the contingency, that is, the death of Mrs. Brown, has had two results: first, to allow an attorney a lump sum fee representing a commuted portion of compensation installments which will never become due; and, second, to enable the employer and insurer to escape a substantial portion of the liability imposed upon them by the award. But, if fault is to be found with the operation of the act in either regard, the complaint should be addressed to the general assembly, and not to the courts, which have no recourse but to apply the act as it is written.

We find no authority for a change in the provision of the award under review with respect to the allowance of the lump sum attorney's fee fixed therein by the commission.

The judgment appealed from is affirmed. *McCullen, P. J.* and *Hughes, J.,* concur.